IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| KARIM A. RAJABALI | § | CASE NO: 05-48547 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| COMERICA BANK | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3439 |
| | § | |
| KARIM A. RAJABALI | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

For the reasons set forth below, Plaintiffs motion for summary judgment is denied.  This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding.

### Background

On October 11, 2005, Karim A. Rajabali ("Debtor") filed for chapter 7 bankruptcy relief. Debtor owned 100% of and operated a company known as ASAP Enterprises Inc. d/b/a/ VIP cleaners ("ASAP").

Debtor, as President of ASAP, had executed a U.S. Small Business Administration Note ("Note") in favor of Comerica ("Plaintiff") in the amount of $350,000.00 on July 26, 2000. Contemporaneously with the Note, Debtor executed a Security Agreement whereby ASAP granted Comerica a continuing security interest in certain collateral to secure payment of the Note ("Security Agreement").[1]   Debtor also executed a U.S. Small Business Administration

---

[1] The collateral included all accounts receivable, inventory, equipment and fixtures, goods, instruments, documents, policies and certificates of insurance, deposits, money or other property, additions, attachments, accessions, parts,

Unconditional Guarantee, by which Debtor unconditionally guaranteed all amounts owning on the note.  Payments were made on the Note until May 2005.

On February 28, 2005, Debtor executed an agreement to sell free and clear of all liens, pledges or encumbrances the furniture, fixtures and equipment, inventory, signs, goodwill and the name (VIP Cleaners) to GRY Enterprises.  GRY Enterprises was to pay $50,000.00 as part of an earnest money contract.  A balance of $340,000.00 was to be paid at closing on March 30, 2005.  The Agreement was signed by Debtor for ASAP and by Ghulam Farooq ("Farooq") for GRY Enterprises ("GRY").  Money was never exchanged pursuant to this contract.  Plaintiff, however, alleges that Debtor did transfer assets to Farooq.

On June 21, 2006, Plaintiff filed a complaint to determine dischargeability of debt under 11 U.S.C. §§ 523(a)(4) and (a)(6) alleging, *inter alia*, that Debtor committed fraud or defalcation while in a fiduciary capacity by secretly entering into the purchase and sales agreement with Farooq and that the alleged transfers of assets from the business was done willfully and maliciously.  Plaintiff also seeks to bar discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A) based on Debtor's alleged failure to keep financial records and allegations of inconsistent statements during Debtor's testimony at the creditor's meeting, 2004 Examination and in representations in his bankruptcy schedules.  Plaintiff now moves for summary judgment on the same.

### Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact.

---

replacements, substitutions, renewals, interest dividends, distributions, rights of any kind and products and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor.

*Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006).  A court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Warfield*, 436 F.3d at 557.  The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005).  When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

## 11 U.S.C. § 523: Exceptions to Discharge

The discharge in bankruptcy is to protect the "honest but unfortunate debtor" and to give the debtor a fresh start. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). There are several debts, however, that for public policy reasons are excepted from discharge. These debts include liabilities the debtor has incurred due to certain malfeasant activity. *See Cohen v. de la Cruz.*, 523 U.S. 213, 222 (1998). Congress has codified this principle in 11 U.S.C. § 523(a). *Id.* (quoting *Grogan*, 498 U.S. at 287) ("The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interests in a complete fresh start.'").

## 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge  any debts incurred due to "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Debtor, as president of ASAP, owes a fiduciary duty to ASAP. "Corporate officers owe fiduciary duties to the corporations they serve and they are without authority to act in any matter in which their interest are adverse to that of the corporation." 15 TEX. JUR. 3D *CORPORATIONS* § 283 (2007) (citing *Myer v. Cuevas*, 119 S.W.3d 830 (Tex. App.—San Antonio 2003, no pet.); *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188 (Tex. App.—Texarkana 2003, pet. denied). When a corporation becomes insolvent, creditors have a priority of distribution of the corporation's assets over that of shareholders. Accordingly, the officers and directors have a duty to preserve assets for the benefit of creditors. *Fagen v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App.— Houston [14th Dist.] 1973, no writ). The officers and directors maintain their fiduciary duties to the corporation. However, similar to a shareholder's ability to bring a derivative suit for violation of fiduciary duties, when a corporation is insolvent, the creditors may bring such a suit

to hold the directors liable for a breach of their fiduciary duties.  *Id.*

The effect of this ability of creditors to bring suits based on a breach of a fiduciary duty has prompted the Fifth Circuit to state that when the officers and directors of a corporation become aware that their corporation is insolvent or within the "zone of insolvency," fiduciary duties expand to creditors of the corporation.  *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 534, n.24 (5th Cir. 2004) (citing *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997)).  Director's and officer's fiduciary duties are not directly to creditors; rather, when a corporation is insolvent, creditors have the ability to enforce such duties which continue to exist as to the corporation. *See Floyd v. Hefner*, No. H-03-5693, 2006 WL 2844245, at *10 (S.D. Tex. Sept. 29, 2006)[2] (citing *Fagen*, 494 S.W.2d at 628).[3]

Plaintiff alleges that ASAP's insolvency occurred in December of 2003.  By allegedly transferring assets of VIP Cleaners and by allegedly secretly entering into the purchase and sale agreement, Plaintiff argues that Debtor breached his fiduciary duties to Plaintiff.  As a necessity for Plaintiff to support its claim, it must demonstrate that Debtor did, in fact, owe a fiduciary duty to Plaintiff.  To show that Debtor owed such a duty, Plaintiff must first demonstrate that ASAP was insolvent.

The Texas Business Corporation Act lists six factors that may be considered in

---

[2] *See Floyd* for a thorough discussion of Texas and Fifth Circuit case law in which the Court examines and clarifies that any fiduciary-type duty directors and officers of an insolvent corporation owe to creditors of the corporation arises from the Trust Fund Doctrine and declines to accept the principle that directors and officers of an insolvent corporation owe a fiduciary duty directly to creditors.  *Floyd*, 2006 WL 2844245 at *9-24.

[3] While *Fagan* stated, in dicta, that when a corporation is insolvent, officers and directors "are placed in a fiduciary relation to and owe a fiduciary duty to the creditors," the Court finds that the context of this statement shows that *Fagen* was not standing for this direct proposition.  *Fagen*, 494 S.W. 2d at 628.  The Court in *Fagen* found that as a general rule, creditors are not allowed to enforce claims for breach of fiduciary duty; but an exception to this general rule arises when the corporation becomes insolvent.  At such time, the assets of the corporation become a trust fund primarily for the benefit of creditors.  The effect of this is that officers and directors have a duty to administer the assets for the benefit of creditors.  A breach of this duty, therefore, gives rise to a cause of action against the officers and directors that can be prosecuted by the creditors on behalf of the corporation.  *Id.*

determining if a corporation is insolvent.  Tex. Bus. Corp. Act. Art. 2.38-3A (Vernon Supp. 2004).  Because of the use of "or" at the end of factor (5), these factors are to be considered as disjunctive, not conjunctive.  *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 532, n.22 (5th Cir. 2004) (citing *Bruce v. First Fed. Sav. and Loan Ass'n of Conroe, Inc.,* 837 F.2d 712, 715 (5th Cir.1988)).

The six insolvency factors that may be used are:

1. financial statements of the corporation, including subsidiaries, that present the financial condition of the corporation in accordance with the generally accepted accounting principles (GAAP);

2. financial statements prepared on the basis of accounting used to file the corporation's federal income tax return or any other reasonable accounting practices;

3. financial information, including condensed financial statements prepared on a basis consistent with (1) and (2) above;

4. projection, forecast, or other forward looking information relating to the future economic performance, financial condition, or liquidity of the corporation that is reasonable in the circumstances;

5. a fair valuation or information from any other method that is reasonable in the circumstances; or

6. any combination of the statements, valuations, or information authorized by this section.

*Id.* (citing Tex. Bus. Corp. Act. Art. 2.38-3A (Vernon Supp. 2004)).[4]  The Court, however, is not required to utilize these factors.  Article 2.38-3A clearly states "[d]eterminations whether a corporation is insolvent . . . may, but is not required to, be based on [the above factors]."  Tex.

---

[4] The Court recognizes that insolvency is also defined under the Texas Business and Commerce Code.  Texas Courts, applying the Texas Business and Commerce Code have interpreted insolvency to mean an "inability to pay debts as they mature."  *See Parkway/Lamar Partners v. Tom Thumb, Stores*, 877 S.W.2d 848, 850 (Tex. App.—Fort Worth 1994, writ denied).  Because the Court is seeking to determine if the corporation was insolvent as insolvency relates to Debtor owing a fiduciary duty to the corporation, the Court finds the Texas Business Corporation Act to be properly instructive.  *See e.g. Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 532-33 (5th Cir. 2004) (finding Texas Corporations Act to be applicable, rather than the Texas Business and Commerce Code, in a suit involving insolvency and a proposed corporate distribution).

Bus. Corp. Act. Art 2.38-3A (Vernon Supp. 2004).

For the purposes of preferences in bankruptcy, a corporation may be deemed insolvent if the sum of its debts exceeds the entity's property at fair valuation—that is the price obtainable in the market if the entity's assets were sold in a reasonably, prudent manner. *In re Lamar Haddox Contractor, Inc.*, 40 F.3d 118, 122 (5th Cir. 1994); *In re Sleepy Valley, Inc.*, 93 B.R. 925, 927 (W.D. Tex. 1988); *See* 11 U.S.C.A. § 101(32). "[T]he proper standard of valuation to be applied in determining solvency in a bankruptcy setting is the value of the business as a going concern[.]" *Askanase v. Fatjo*, Civ. A. No. H-91-3140, 1993 WL 208440, at * 6 (S.D. Tex. Apr. 22, 1993).

Plaintiff bears the burden of showing evidence that would entitle it to judgment at trial. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). To support its claim that ASAP was insolvent, thereby allowing for Plaintiff to bring a claim for breach of fiduciary duty, Plaintiff has offered Exhibits "H" and "I" which are MetroBank, N.A. bank statement's for ASAP for December 2003 and December 2004, respectively. Exhibit "H" shows multiple overdraft charges for the month of December 2003. Exhibit "I" shows multiple overdraft charges and a negative closing statement balance of $2,766.64 for December 2004. These two documents make up the entirety of Plaintiff's evidence on this issue.

The Court finds it need not reach a determination of whether fraud or defalcation actually occurred. Presentation of two bank statements showing insufficient funds in ASAP's account simply does not warrant a finding on summary judgment of insolvency.[5] Without showing insolvency, Plaintiff has not demonstrated it has standing to bring a claim for breach of fiduciary duty. Plaintiff's motion for summary judgment as its claim pursuant to 11 U.S.C. § 523(a)(4) is

---

[5] Debtor objects to the admissibility of the bank statements. Based on the Court's findings on this issue, the objection is moot.

7

denied.

## 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."   The burden of proof is on the creditor to establish "by a preponderance of the evidence that his claim is not dischargeable. . ." *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

A willful injury requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *In re Grisham*, 245 B.R. 65, 71 (Bankr. N.D. Tex. 2000) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).   Section 523(a)(6) refers to intentional torts which "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"  *Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 8A, cmt. a, p. 15 (1964)).  "The creditor must establish 'either an objective certainty of harm or a subjective motive to cause harm.'"  *In re Grisham*, 245 B.R. at 71 (quoting *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)). For example, when a security agreement is involved, if the creditor can show that the debtor deliberately and intentionally failed to remit proceeds of collateral to a secured party, as required under a security agreement, the creditor may be able prevail on a claim of non-dischargeability under § 523(a)(6).  *See Id.*

To be malicious, the injury must occur "without just cause or excuse."  *Id.* (citing *In re Garner*, 56 F.3d 677, 681 (5th Cir. 1995)).  Malice as required under § 523(a)(6) may be inferred if the debtor acts "in a manner which one knows will place a lender at risk, such as converting property in which the lender holds a security interest. . . ."  *In re Theroux*, No. 94-50530, 1995 WL 103342, *3 (5th Cir. Feb. 27, 1995) (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 (5th Cir. 1986)).  When a debtor is an experienced businessman, it

may be reasonable to infer that the debtor knows disposing of collateral will "jeopardize" the lender's security interest.  *Id.*

In support of its motion, Plaintiff has alleged that Debtor "simply handed the collateral over to Farooq, in violation of the Security Agreement."  Mo. for Sum. J. ¶ 9.  Plaintiff states that it made multiple attempts to communicate with Farooq and during one particular attempt, Plaintiff states it went to the site of the cleaners and was told that the collateral was not being used and was not operable.  *Id.*  at ¶ 12.

There is, however, some obvious confusion over whether the collateral was transferred—and, if it was transferred, to what extent—to Farooq.  Plaintiff stated that prior to the creditor's meeting, Debtor notified Plaintiff that the cleaners, including the collateral securing the Notes, was transferred to GRY.  *Id.*  at ¶ 17.  However, Plaintiff also states that during the 2004 Examination of the Debtor, Debtor testified that because he never received any money from GRY, Debtor was still the owner of ASAP and the cleaners even though GRY had paid some of the Cleaner's bills.  *Id.*  at ¶ 16.  Plaintiff believes that Debtor transferred the collateral to Farooq and then did not insist on performance under the purchase and sales contract.  Such acts, Plaintiff alleges "demonstrates Debtor knew or should have known his actions would cause injury to Comerica."  *Id.*  at ¶ 17.

Debtor argues that he entered into the contract to sell to Farooq with the intention of paying off the loan to Plaintiff upon closing.  Under the contract, Debtor was to receive $390,000 which would have been more than sufficient to pay his indebtedness to Plaintiff.  Debtor alleges that because of a heart condition, he left the business and allowed Farooq to take over prior to receiving the $50,000 earnest money.  Further, Debtor argues that there was nothing in the loan or security agreement precluding ASAP from allowing any other person to operate the business

in the event of Debtor's poor health.  Because the earnest money was never paid, Debtor states the business and collateral were never transferred to Farooq or GRY.

Plaintiff has the burden at trial to show by a preponderance of the evidence that Debtor acted willfully and maliciously.  *Grogan*, 498 U.S. at 286.  Accordingly, it is Plaintiff's burden to present evidence on his motion that would entitle it to a favorable judgment at trial.  *Hart*, 343 F.3d at 764.  The Court is not to weigh the evidence, but rather view the evidence in the light most favorable to the non-moving party.  *Rodriguez*, 436 F.3d at 473.

The Court finds that Plaintiff has not met its burden.  To show a willful injury, Plaintiff must demonstrate that when Debtor entered into the contract with Farooq, he either created an objective certainly of harm or evidenced a subjective motive to cause harm.  *See In re Grisham*, 245 B.R. at 71.  Plaintiff has neither met this burden nor shown that Debtor abandoned the collateral with intent or certainty to harm Plaintiff's security interest.

Debtor has asserted that had the purchase and sales agreement closed, he would have had sufficient funds to pay Plaintiff.  The face of the contract supports this argument.  The Court cannot find that Debtor knew that the purchase and sales agreement would cause harm to Plaintiff.  Moreover, transfer of the business by the sale never actually occurred.  Plaintiff has failed to present evidence, or sufficient legal authority, that an attempted sale can even be willful or malicious.  At most, Plaintiff has alleged that Debtor failed to maintain the collateral in violation of the security agreement which may support a finding of malice.  There is insufficient evidence, however, to fully support this allegation or to allow the Court to find that Debtor acted willfully.  The motion for summary judgment as to Plaintiff's § 523(a)(6) claim is denied.

**11 U.S.C. § 727(a)(3)**

Section 727 prevents a court from granting the debtor a discharge if the debtor has participated in or failed to perform certain acts.  Specifically section 727(a)(3) prevents a discharge if the debtor has:

> concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).  The purpose of this section is to "force the Debtor to produce dependable records such that the Chapter 7 Trustee, the creditors, and the Court may rely on these records in tracing the Debtor's financial history and condition."  *In re Jones*, 327 B.R. 297, 303 (Bankr. S.D. Tex. 2005) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992) (citing 4 COLLIERS ON BANKRUPTCY ¶ 727-03[1] (15th ed. 1979)).  "Subsection (a)(3) also tests the completeness of the Debtor's disclosures before granting him a discharge."  *Id.* (citing *Meridian Bank*, 958 F.2d at 1230).

The Plaintiffs must prove that the Debtor (1) failed to keep and preserve financial records; and (2) that this failure prevented the Plaintiffs from ascertaining the Debtor's financial condition.  *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003) (citing *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 263 (Bankr. M.D. Fla. 2002)).  The Fifth Circuit has not stated a particular threshold which satisfies the Debtor's record keeping requirements.  What has been required is that, while the records "need not contain full detail," "there should be written evidence of the debtor's financial condition."  *Id.* (quoting *Goff v. Russell Co. (In re Goff)*, 495 F.2d 199, 201 (5th Cir. 1974)).  A debtor who produces grossly inadequate records so that a party is "unable to determine the debtor's financial condition[,] is not entitled to a discharge."  *In*

*re Jones*, 327 B.R. at 303 (citing *Union Planters*, 283 F.3d at 901).

Under subsection (a)(3), there is no requirement that Plaintiff show fraudulent intent or recklessness. *Id.* (citing *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002)). Therefore, even negligence will suffice to justify a discharge under § 727(a)(3). *Id.* (*citing In re Powers*, 112 B.R. 184, 190 (Bankr. S.D. Tex. 1989)).

Once Plaintiff satisfies its burden, the Debtor may then show that any inadequacies were justified under the circumstances. *Dennis*, 330 F.3d at 703 (citing *Sadler*, 282 B.R. at 263). The Court has wide discretion in determining the adequacy of the records and whether the Debtor justified his lack of production. *Id.* Factors that courts consider to determine whether debtors' failure to produce adequate financial records include: (1) a debtor's education; (2) a debtor's sophistication and business experience; and (3) any special circumstances that may exist. *In re Jones*, 327 B.R. at 305 (citing *In re Sigust*, 255 B.R. 822, 827 (Bankr. W.D. La. 2000)); *See e.g. In re Hughes*, 353 B.R. 486, 500 (Bankr. N.D. Tex. 2006) (citing *Structured Asset Serv., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 241 (Bankr. N.D. Ill. 2005) (In making a determination on the adequacy of records, the court may consider "the debtor's sophistication, educational background, business experience, business acumen, and personal financial structure)); *In re Schifano*, 378 F.3d 60, 68 (1st Cir. 2004) (The standard for a claim of failure to maintain records is based on reasonableness under all the circumstances, which includes examining the education and sophistication of the Debtor).

In support of its argument that Debtor has not presented sufficient financial records, Plaintiff alleges the following: (1) Debtor claimed that any records relating to the cleaners or collateral are in possession of an accountant; however, Debtor failed to disclose an accountant on his schedules; (2) Debtor testified at the second creditor's meeting that he did not have

documentation of the transfer to Farooq; (3) Debtor's tax returns and tax returns of the cleaners are inconsistent and the Debtor's accountant has been unable to reconcile the differences;[6] (4) the state of the Debtor's books are such that the Debtor does not know if he owns the cleaners; (5) the creditors listed in Schedule E are listed with numbers rounded to the nearest thousand; (6) most creditors are listed as consumer debt or credit cards when they are, in fact, business debts due by Debtor's corporation; (7) Plaintiff is unclear as to what has become of Debtor's corporations listed on schedule B; and (8) It is unclear whether Debtor is entitled to $390,000 in proceeds from sale of the cleaners.  Further, Plaintiff states there is no financial information available regarding the cleaners.

Neither Plaintiff nor Debtor has stated what financial records have been requested or what financial records have been produced.  Debtor denies Plaintiff's allegations and states he has produced every record requested and has shown ownership of 100% of the shares of ASAP by scheduling ASAP for $1.00 on his schedules B and C.  Debtor further references his testimony during his 2004 Examination where Debtor testified that he owned ASAP and VIP cleaners.  At the 2004 Examination, Debtor also gave authorization for Plaintiff to remove its collateral from the cleaners.

While Plaintiff has highlighted some inconsistencies in Debtor's statements regarding the financial affairs and record keeping of Debtor's business, the Court finds that Plaintiff has not met its burden on summary judgment of showing that Debtor failed to keep and preserve financial records and that this failure prevented Plaintiff from ascertaining the Debtor's financial condition.  *See Dennis*, 330 F.3d at 703.  Fact questions exist as to what financial information is available from the Debtor and his business and the completeness of such information.  In

---

[6] Debtor objects to the admissibility of the tax returns.  Based on the Court's findings on this issue, the objection is moot.

addition, the Court notes Debtor has averred to his heart condition as preventing him from participating in running the cleaners.  Such a problem may fall under the category of "special circumstances" in gauging justification for any inadequacy of records should inadequacies exists. *See e.g. In re Jones*, 327 B.R. at 305.  Plaintiff's motion for summary judgment as to its § 727(a)(3) claim is denied.

## 11. U.S.C. § 727(a)(4)(A)

Under § 727(a)(4)(A), the court may deny debtor's discharge if the court finds that the debtor "knowingly and fraudulently, in or in connection with [his bankruptcy case] made a false oath or account." 11 U.S.C. § 727(a)(4)(A);  *E.g. In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005).

To establish a false oath, the creditor must show that "(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Pratt*, 411 F.3d at 566 (citing *Beaubouef,* 966 F.2d at 177).

The objecting party must show by a preponderance of the evidence that the debtor made a false oath or account with either the intent to defraud or with reckless indifference to the truth. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001); *Grogan v. Garner,* 498 U.S. 279, 287 (1991). Such a determination "can be proven by circumstantial evidence." *In re Sholdra*, 249 F.3d at 382 (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)).

Such false oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings."  *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir.1992) (quoting 4 COLLIER ON BANKRUPTCY ¶ 727.04[1] (15th ed.1992)).

Plaintiff argues that Debtor's false oath arises from inconsistencies in his statements as to

14

whether Debtor owns the cleaners, has transferred the cleaners or is due any amounts for selling the cleaners.   Plaintiff alleges that Debtor failed either in his schedules or during the creditor's meeting to disclose any transfer of the cleaners, any claim he may have against Farooq or GRY for failure to make payment or, alternatively, that Debtor is the current owner of the cleaners.

Specifically, Plaintiff argues that at the creditor's meeting held on November 21, 2005, Debtor testified that ownership of the stock of the cleaners and the collateral associated with the Security Agreement was transferred to Farooq for no consideration.   The Court finds these statements to be only partially accurate.   As the Debtor asserts, the Court finds that Debtor's testimony at the November 21, 2005 creditor's meeting was that he owned 100% of ASAP enterprises.   The Court, however, does find that the testimony is that Debtor may have transferred the collateral to Farooq, or at least allowed Farooq to run the daily operations, for no consideration. Plaintiff argues inconsistent statements were made thereafter when in a telephonic conference, Debtor allegedly stated that Farooq owed him approximately $50,000.00 for the cleaners.   However, other than Plaintiff's allegations, the Court has no proof this statement was actually made.

Plaintiff further alleges inconsistencies in that during the Debtor's 2004 Examination, which occurred on May 31, 2006, the Debtor testified that because he had not received money for the cleaners under the purchase and sales agreement entered into with Farooq, he owned ASAP Enterprises and the cleaners and that while neither he nor ASAP Enterprises received money from GRY, GRY had paid some of the Cleaner's bills.

The Court finds that Debtor's statements during the creditor's meeting and the 2004 Examination, while somewhat confusing, are not entirely inconsistent.   Debtor, in his oral statements, has continued to assert that he owns 100% of ASAP which owns the cleaners.   Any

15

transfer of collateral in violation of the security agreement and the extent of Debtor's current involvement in the operations of the cleaners, however, is unclear.

While the Court may be able to determine Debtor's ownership of ASAP based on his statements at the creditor's meeting and at the 2004 Examination, this does not excuse the fact that Debtor failed to list any interest in ASAP or any other interest related to the cleaners in his initial schedules filed on October 11, 2005.  By failing to list his interest, Debtor has satisfied the first two prongs of *Pratt*: (1) Debtor made a statement under oath; and (2) the statement was false.  *In re Pratt*, 411 F.3d at 566.  To find that this omission warrants a denial of discharge, Plaintiff must further establish that (1) Debtor knew the omission was false; (2) Debtor made the omission with fraudulent intent; and (3) the omission related materially to the bankruptcy case. *Id.*  The Court will first address the materiality of the omission and then examine intent.

A statement or omission is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  *Beaubouef*, 966 F.2d at 178 (citing *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)).  The materiality of an omission does not depend on the value of the asset which was omitted or whether the omission was actually detrimental to creditors.   *In re Beaubouef*, 966 F.2d at 178 (citing 4 COLLIER ON BANKRUPTCY, ¶ 727.04[1], at 727-59).

In *Beaubouef*, the debtor asserted that his failure to disclose an ownership interest in a business, which he characterized as "worthless", was not material.  *Id.*  In rejecting this argument and affirming the bankruptcy court's denial of debtor's discharge the Court stated:

> The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. The veracity of the bankrupt's statements is essential to

the successful administration of the Bankruptcy Act.

*Id.* (citing *In re Chalik*, 748 F.2d at 617).

The Court finds Debtor's interest in the cleaners and in ASAP clearly bears a relationship to Debtor's estate and concerns the discovery of assets, business dealings and the existence and disposition of property.  *See Beaubouef*, 966 F.2d at 178.  Debtor failed to list his business interest.  Accordingly, the Court finds Debtor's failure to list his interest in ASAP is material.

While it is undisputed that Debtor failed to list his interest in ASAP Enterprises on his initial schedules, an integral component in denying discharge under § 727(a)(4)(A) is that the debtor's false oath was made with fraudulent intent.  It is clear that Debtor testified as to his interest at the creditor's meeting on November 21, 2005 and afterwards, on December 14, 2005, amended his schedules to reflect an interest in ASAP Enterprises.

In his amended schedules, Debtor lists personal and exempt property including 100% of ASAP Enterprises with a current market value of $1.00.  The Fifth Circuit is clear, however, that the act of a debtor amending his schedules does not negate a finding of false oath.  *In re Sholdra*, 249 F.3d 380, 382-83 (5th Cir. 2001).

In *In re Sholdra*, Debtor amended his schedules and statement of financial affairs after his deposition confirmed the existence of false statements.  *In re Sholdra*, 149 F.3d at 381.  A judgment creditor filed a motion for summary judgment under, *inter alia*, § 727(a)(4)(A) based on such false oaths.  *Id.*  Debtor failed to respond.  *Id.*  The Fifth Circuit affirmed summary judgment in favor of the creditor finding that it was undisputed that Debtor originally made false statements in his schedules and statement of financial affairs and that due to Debtor's failure to respond to the motion for summary judgment, there were no facts creating genuine issues of material facts.  *Id.* at 383.  The Court, however, citing *Beaubouef*, specifically stated that it was

not deciding "whether such amendments could ever preclude summary judgment denying discharge." *Id.* (citing *Beaubouef*, 966 F.2d at 178 ("suggesting that an opportunity to clear up inconsistencies and omissions with amended schedules may be considered in analyzing findings of actual intent to defraud").

In *In re Beaubouef*, the Court denied debtor's discharge finding debtor's omission of business interests from his schedules was sufficient to constitute a false oath. *In re Beaubouef*, 966 F.2d at 178. The Court in *In re Beaubouef* found that Debtor failed to indicate his business interest in two separate companies. *Id.* One, which debtor characterized as "worthless," and another in which the Court found that "a life insurance application dated just weeks before the petition was filed indicated that [debtor] knew that he had an ownership interest in the company." *Id.* The Court also found that debtor's failure to amend his schedules until six months after the Rule 2004 examination contributed to his "reckless indifference to the truth and, therefore, the requisite intent to deceive." *Id.*

The facts in this case do not present as clear a picture as that in *In re Beaubouef*. "A discharge cannot be denied when items are omitted from the schedules by honest mistake." *In re Beaubouef*, 966 F.2d at 178. Although Debtor may have realized at the time he filed his initial schedules that he owned 100% of ASAP Enterprises, the facts do not establish, for purposes of summary judgment, that Debtor failed to list such ownership with fraudulent intent or reckless indifference to the truth. Debtor openly testified at the creditor's meeting as to his interest in the business and promptly amended his schedules thereafter. Although Schedule B, line 12 clearly indicates for debtors to list interest in stock and incorporated and unincorporated businesses, the Court is unclear as to Debtor's sophistication in financial and business matters and Debtor's knowledge that ASAP Enterprises should be listed even when there may have been a pending

18

contract which could have provided Debtor with only a "break-even" sale.[7]

While intent may be inferred from circumstantial evidence, the Court finds that the evidence before this Court does not support a finding of fraudulent intent on summary judgment. Plaintiff's motion for summary judgment as to the cause of action under § 727(a)(4)(A) is denied.  A separate order will issue.

Signed at Houston, Texas, on March 22, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

---

[7] Debtor's interest in ASAP Enterprises is scheduled as $1.00 in his amended schedules B and C.  Without evidence of the corporation's financial status, the Court cannot determine whether this is a true valuation.